RECEIPT NUMBER
S2O594



## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**FRANK KEVIN FISCHER,**

        Plaintiff,

vs.

**UNITED PARCEL SERVICE CO.**
*a foreign corporation,*

        Defendant.

JUDGE : O'Meara, John Corbett
DECK  : S. Division Civil Deck
DATE  : 02/01/2005 @ 12:50:53
CASE NUMBER : 2:05CV70366
CMP FRANK KEVIN FISCHER V UNITED
PARCEL SERVICE CO (DH)

**DEMAND FOR JURY TRIAL**

MAGISTRATE JUDGE VIRGINIA M. MORGAN

---

**DEBORAH L. GORDON, PLC**
**Deborah L. Gordon (P27058)**
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills Michigan 48304
Telephone 248 258 2500

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff **Frank Kevin Fischer** by his attorneys **Deborah L. Gordon, PLC** complains against Defendant as follows:

### *Jurisdiction and Parties*

1.    This is an action for retaliation brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e, *et seq.* and Michigan's Elliott-Larsen Civil Rights Act, MCL §37.2101 *et seq.*, arising out of Plaintiff's employment relationship with Defendant.

2.    Plaintiff's retaliation claim is based on an earlier discrimination action brought by Plaintiff in Michigan state court on October 5, 2000, removed to U.S. District Court, Eastern District of Michigan (Case No. 02-1071), and assigned to Judge Victoria A.

Roberts.

3. This Court has jurisdiction of Plaintiff's claim under and pursuant to 42 USC §2000e-5 and 28 USC §1331 and §1343.

4. This Court has jurisdiction of Plaintiff's state law claim pursuant to the doctrine of pendent jurisdiction.

5. Defendant **United Parcel Service Co.** (hereafter Defendant **UPS**) is a foreign corporation doing business within the Eastern District of Michigan.

6. The events giving rise to this cause of action occurred within the Eastern District of Michigan and this matter is otherwise within the jurisdiction of this Court.

7. Plaintiff timely files this action within 90 days of receiving "Notice of Right-to-Sue" from the Equal Employment Opportunity Commission, which Notice was mailed to him on or about January 13, 2005.

### *Background Facts*

8. Plaintiff **Fischer** became employed with Defendant **UPS** on or about September 18, 1985.

9. Plaintiff is an African-American male.

10. During his employment relationship with Defendant, Plaintiff performed his job duties in a manner that was satisfactory or better.

11. Starting out with Defendant as a part-time unloader, Plaintiff rose through the ranks until 1997, when he was promoted to the position of "National Account Manager", or "NAM," a position he held until his termination from Defendant in February, 2003.

12. Plaintiff was the only African American National Account Manager, "NAM", in his region.

13. In his position as NAM, Plaintiff was assigned to the Ford Motor Company small packages account.

14. In 1999, Plaintiff was instrumental in forging a lucrative deal between Ford and Defendant UPS. Plaintiff's relationship with a high-level manager at Ford, who was also African-American, was integral to Defendant's successful negotiation of this contract, which was signed in 2000.

15. In December, 1999, Plaintiff was removed from the Ford small packages account and assigned to several smaller, less desirable accounts.

16. At the time, Plaintiff's manager, a Caucasian male, had made the statement to Plaintiff that he (Plaintiff) and his contact at Ford were a "couple of brothers trying to take care of each other, and I'm not going to let that happen."

17. Based on the aforementioned statement and other evidence of discriminatory animus, Plaintiff complained to Defendant **UPS** that his removal from the Ford account was the product of race discrimination.

18. Unable to resolve his discrimination complaint internally, Plaintiff filed a lawsuit in state court on October 5, 2000, alleging race discrimination, racial harassment, and retaliation under Michigan's Elliott-Larsen Civil Rights Act.

19. In February, 2001 Plaintiff was placed on a medical leave of absence from work.

20. In January, 2002, Plaintiff provided Defendant with a doctor's release stating that he was able to return to work from his medical leave.

21. Defendant **UPS** refused to accept the aforementioned doctor's release.

22. After complaining about Defendant's refusal to accept his doctor's release,

Plaintiff was returned to work on February 4, 2002.

23. Upon his return to work in February 2002, Plaintiff was assigned to the same supervisor he had been assigned to from January 2000 until his medical leave began in February 2001.

24. The aforementioned supervisor had testified on behalf of Defendant UPS at the trial of Plaintiff's discrimination case which took place in December, 2001, two months prior to Plaintiff's return to work.

25. Following his return to work, Plaintiff was held to a different standard and subjected to less favorable treatment than his peers.

26. These differences in treatment included the fact that he was restricted to the office, was not assigned any accounts, was prohibited from contacting customers, was subjected to greater scrutiny by his supervisor, and was expected to report his whereabouts to his supervisor at all times and to obtain her approval for breaks - requirements that were unheard of with respect to managers at Plaintiff's level.

27. During 2002, Plaintiff's supervisor continued to treat Plaintiff less favorably than his peers, avoided personal contact with him, and communicated with him by e-mail instead.

28. Despite the less favorable treatment Plaintiff received from management, he was successful in bringing in a significant amount of new business during 2002.

29. On February 5, 2003, exactly one year and one day after Plaintiff's return from medical leave, he was called to a meeting with his supervisor and a human resources manager and was questioned in an accusatory and hostile manner about missing a training meeting the previous day and about taking a test. In an attempt to anger Plaintiff,

the two continued to harass him after he had already agreed to attend a make-up training class and take the test.

30. On February 4, 2003, the day he had missed the training meeting, Plaintiff had called to inform his supervisor of his absence and she was aware that he had been in a car accident.

31. On February 6, 2003, Plaintiff advised his supervisor, via e-mail, that he considered her actions on February 5 to be continued racial discrimination, harassment, and retaliation.

32. Plaintiff attended the make-up training meeting on February 6, 2003, along with a number of other employees who had missed the previous session. Plaintiff completed and passed the aforementioned test on February 7, 2003.

33. On February 11, 2003, Plaintiff's supervisor and the aforementioned human resources manager called him to another meeting and verbally attacked him for not personally handing the aforementioned test to his supervisor.

34. After explaining several times that he had left the test on his supervisor's desk because she was not in her office at the time, Plaintiff stated that he did not want to argue. Plaintiff was then suspended immediately, "pending an investigation", and sent home.

35. Later in the day on February 11, 2003, Plaintiff was called back into the office and terminated for "conduct unbecoming a manager."

36. In addition to the aforementioned events, other efforts were made by agents of Defendant, during the days leading to Plaintiff's termination, to trump up "reasons" to justify terminating him.

37. Plaintiff's termination was in fact motivated by his internal complaints and his

lawsuit alleging race discrimination, harassment, and retaliation.

### Count I - Retaliation

38.    Plaintiff incorporates by reference Paragraphs 1 through 37 above.

39.    Plaintiff's treatment and termination as described above was retaliatory and occurred, in part, because Plaintiff complained about and objected to Defendant's discriminatory treatment of him.

40.    Defendant's retaliatory treatment and termination of Plaintiff was in violation of the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000(e) *et seq.*

41.    Defendant's retaliatory treatment and termination of Plaintiff was in violation of the anti-retaliation provisions of Michigan's Elliott-Larsen Civil Rights Act, MCL §37.2101 *et seq.*

42.    The actions of Defendant, by its agents, employees and representatives, were intentional, in deliberate disregard for the rights and sensibilities of Plaintiff.

43.    As a direct and proximate result of those actions, the terms, conditions and privileges of Plaintiff's employment were adversely affected.

44.    As a direct and proximate result of the Defendant's wrongful and discriminatory treatment of Plaintiff, Plaintiff has suffered injuries and damages, including, but not limited to, loss of past, present and future earnings and earning capacity; loss of the value of fringe and pension benefits; bonuses; stock and stock option losses; mental and emotional distress, including anxiety and mental anguish; humiliation and embarrassment; loss of the ordinary pleasures of everyday life, including the right to seek and pursue gainful occupation of choice; and loss of professional reputation.

## *RELIEF REQUESTED*

For all of the foregoing reasons, Plaintiff **Frank Kevin Fischer** demands judgment against Defendant as follows:

    **A.**    **Legal Relief:**

        1.    Compensatory damages in whatever amount he is found to be entitled;

        2.    Exemplary damages in whatever amount he is found to be entitled;

        3.    Punitive damages in whatever amount he is found to be entitled;

        4.    A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled.

        5.    An award of interest, costs and reasonable attorney fees.

    **B.**    **Equitable Relief:**

        1.    An injunction out of this Court prohibiting any further acts of discrimination or retaliation.

        2.    An award of interest, costs and reasonable attorney fees.

        3.    Whatever other equitable relief appears appropriate at the time of final judgment.

        **DEBORAH L. GORDON, PLC**

By _/s/ D.L. Gordon_
Deborah L. Gordon (P27058)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills Michigan 48304
Telephone 248 258 2500

Dated: January 31, 2005

## JURY DEMAND

Plaintiff **Frank Kevin Fischer** through his attorneys **Deborah L. Gordon, PLC** demands a trial by jury of all issues in this cause.

          **DEBORAH L. GORDON, PLC**

By: _/s/ D. V. Gordon_
Deborah L. Gordon (P27058)
Attorneys for Plaintiff

Dated: January 31, 2005

# CIVIL COVER SHEET

**COUNTY IN WHICH THIS ACTION AROSE:** Wayne County, Michigan

JS-44 (11/99)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**05-70366**

### I. (a) PLAINTIFFS
FRANK KEVIN FISCHER

### DEFENDANTS
UNITED PARCEL SERVICE CO.,
a foreign corporation

(b) County of Residence of First Listed Plaintiff: Wayne County Michigan

County of Residence of First Listed Defendant: Wayne County Michigan

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

(C) ATTORNEYS (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)
Deborah L. Gordon (P27058)
33 Bloomfield Hills Parkway, Suite 275
Bloomfield Hills, MI 48304
Phone (248) 258 2500

ATTORNEYS (IF KNOWN)

JOHN CORBETT O'MEARA
MAGISTRATE JUDGE VIRGINIA M. MORGAN

### II. BASIS OF JURISDICTION
[X] 3 Federal Question (U.S. Government Not a Party)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Diversity Cases Only)

### IV. NATURE OF SUIT
Circled: 442 Employment

### V. ORIGIN
[X] 1 Original Proceeding

### VI. CAUSE OF ACTION
Retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 USC §2000e, et seq

**COMPLAINT:** UNDER F.R.C.P. 23

**JURY DEMAND:** [X] YES

### VIII. RELATED CASE(S) IF ANY
JUDGE: Victoria A. Roberts
DOCKET NUMBER: 02-1071

**DATE:** January 31, 2005

**POSSIBLE COMPANION CASE**

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?   ☐ Yes   ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)   ☒ Yes   ☐ No

   If yes, give the following information:

   Court   U.S. District Court, Eastern District of Michigan

   Case No.:   02-1071

   Judge:   Victoria A. Roberts

   Notes: