**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**FRANK KEVIN FISCHER,**

         **Plaintiff(s),**         **CASE NUMBER: 05-70366**
                                            **HONORABLE VICTORIA A. ROBERTS**

**v.**

**UNITED PARCEL SERVICE,**

         **Defendant(s).**
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on Defendant's Motion for Judgment as a Matter of Law or, in the Alternative, for New Trial or, in the Alternative, for Remittitur. Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

**II.    BACKGROUND**

Plaintiff Kevin Fischer's claim of retaliation under Title VII and the Elliott-Larsen Civil Rights Act was tried before a jury in March 2007. On March 27, 2007, the jury returned a verdict in Plaintiff's favor and against Defendant United Parcel Service ("UPS"). The jury awarded Plaintiff $150,000 for back pay, $650,000 in compensatory damages, and $1.3 million in punitive damages. The Court reduced the punitive damage award to $300,000 due to Title VII's statutory cap on such damages. Therefore, judgment in the amount of $1.1 million dollars was entered in Plaintiff's favor.

Defendant challenges the jury verdict and award of damages. Defendant asserts

that it is entitled to judgment as a matter of law, a new trial, or remittitur of the compensatory damage award.

## III.  ARGUMENTS AND APPLICABLE LAW

### A.  Judgment as a Matter of Law

Before the case was submitted to the jury, Defendant requested a directed verdict on the merits. It also argued that Plaintiff's proofs did not support a punitive damage award. The Court denied Defendant's motion for directed verdict and found that there was sufficient evidence to support such an award. Defendant renews its arguments and requests judgment as a matter of law, pursuant to FRCP 50(b).

When reviewing the sufficiency of evidence under Rule 50(b), the evidence should not be weighed, the credibility of the witnesses should not be questioned, and the judgment of the court should not be substituted for that of the jury. *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 -176 (6th Cir. 1996). "Instead, the evidence should be viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences. The motion should be granted, and the district court reversed, only if reasonable minds could not come to a conclusion other than one favoring the movant." *Id* at 176.

#### 1.  Causation

Plaintiff alleged that he was fired in retaliation for a prior lawsuit (resolved in Defendant's favor). To prove retaliation under Title VII and the ELCRA, Plaintiff must establish as part of his *prima facie* claim that, "there was a causal connection between the protected activity and the adverse employment action." *Garg v Macomb County*

*Community Mental Health Services,* 472 Mich. 263, 273 (2005). *See also EEOC v Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997). The burden of proof for causation is somewhat different under state and federal law. Under Title VII, a plaintiff is only required "to show a causal relationship between the protected conduct and the adverse action." *Smith v City of Holland Board of Public Works,* 102 F.Supp.2d 422, 429 (W.D. Mich. 2000). "In order to make such a showing, a plaintiff must produce evidence from which an inference can be drawn that his protected activity was likely the reason for the adverse action." *Id.* Michigan courts impose a higher burden. "To establish causation, the plaintiff must show that his participation in [the protected activity] was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Barrett v Kirtland Community College,* 245 Mich.App. 306, 315 (2001).

Defendant contends Plaintiff failed to present evidence to establish causation under either standard because he failed to show he was treated differently from similarly situated employees because of his prior lawsuit. And, even if Plaintiff established causation, Defendant contends that he did not prove that its purported legitimate, nondiscriminatory reason for discharging him--insubordination and conduct unbecoming a manager during three meetings--was merely pretextual, and that the real reason for his termination was retaliation. See *Avery Dennison,* 104 F.3d at 862 (setting forth shifting burdens of proof when prima facie claim established).

The Court finds there was sufficient evidence to support causation under the federal and state standards. An employee can establish a causal connection between adverse employment action and protected activity with evidence that acts of retaliation

3

occurred in close temporal proximity to protected conduct and that an employer scrutinized him more carefully or treated him differently than comparably situated employees   *Clark County School District v Breeden*, 532 U.S. 268, 273 (2001); *Harrison v Metropolitan Government of Nashville and Davidson County Tennessee,* 80 F.3d 1107, 1119 (6th Cir. 1996), *overruled in part on other grounds by, Jackson v Quanex Corp.,* 191 F.3d 647, 667 n.6 (1999); *Moore v KUKA Welding Systems*, 171 F.3d 1073, 1080 (6th Cir. 1999).

There was testimony that Plaintiff's immediate supervisor, Allison Jarlett, began to scrutinize Plaintiff more closely than his colleagues and imposed additional requirements on him immediately after his return to work.  Specifically:  1) Jarlett acknowledged that she sent written notification to two of her superiors that Plaintiff was 31 minutes late to work on his first day back, even though he called to let her know he would be late and it was not her typical practice to report such things to superiors (Tr. Vol. 2 at pp. 107-109); 2) Jarlett admitted she required Plaintiff to take all of the 2002 assessment tests at one time when he returned, even though other employees in the same position were allowed to take the same tests at intervals throughout the year  (*Id* at pp. 117, 120); 3) Plaintiff testified that he did not need to complete all of the tests in order to perform as required on accounts (he could have done both simultaneously), but Jarlett delayed reassigning Plaintiff accounts and required him to maintain strict office hours not imposed on other National Account Managers ("NAM") until he completed all of the tests; 4) Jarlett said she did not put a lot of negative memos about Plaintiff in the file she maintained prior to his lawsuit, but she acknowledged inserting a number of critical memos throughout the year after his return; and 5) a few days before he was

4

fired, Jarlett recommended the lowest pay increase for Plaintiff even though his sales numbers were not the lowest of all of the NAMs.

Plaintiff also testified that after his lawsuit there was a marked difference in his interactions with Jarlett concluded, which continued until he was fired. Prior to the suit, Plaintiff said he and Jarlett enjoyed a congenial working relationship. Immediately after he returned, he said she was distant and significantly less communicative with him than in previous years and as compared to her interaction with other NAMs. Plaintiff's Administrative Assistant, Sonya McQuitter, worked for Plaintiff and Jarlett before and after his lawsuit. McQuitter also said Jarlett was friendly and talked with other NAMs, but had noticeably less interaction with Plaintiff than prior to his suit and less than she had with other NAMs after he returned. Tr. Vol. 4 at p. 96.

Defendant either disputed or offered justifications for each of Plaintiff's claims. But, the Court is not at liberty to weigh credibility, and when all of the evidence is viewed in the light most favorable to Plaintiff, reasonable minds could differ regarding whether Plaintiff's prior lawsuit was a "significant factor" and the "likely reason" he was discharged.

Plaintiff also presented evidence which, when construed most favorably to him, rebuts Defendant's alleged legitimate, nondiscriminatory reason for his discharge. Jarlett and, Defendant's Metro Detroit Human Resources Manager, Anna VanTilburg said Plaintiff was fired when he behaved insubordinately during three meetings when they confronted him for alleged deficiencies in his work and communication with Jarlett. Jarlett and VanTilburg said Plaintiff behaved in an insubordinate and belligerent fashion by twice refusing to speak to them during the meetings, abruptly jumping up as though

5

he were leaving, and refusing (during the last meeting) to commit to corrective action to resolve the issues raised. Plaintiff, however, denied that he refused to speak at all; he says, he only refused to continue to respond to accusations he had already addressed many times during the meetings. He also denied jumping up to leave or that, during the last meeting, he was asked to commit to corrective actions. Plaintiff's testimony provided ample grounds for jurors to reject Defendant's purported legitimate, nondiscriminatory reasons for discharging him.

Defendant's motion for judgment as a matter of law on the merits is denied.

### 2. Punitive Damages

Defendant contends that Plaintiff's request for punitive damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, should have been dismissed as a matter of law because he failed to present evidence of behavior warranting punitive damages and failed to rebut their "good faith efforts" defense.

When intentional discrimination is alleged under Title VII, a plaintiff may recover punitive damages if he proves by a preponderance that the defendant "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the [plaintiff's] federally protected rights." 42 U.S.C. §1981a(b)(1). See also *Kolstad v American Dental Association*, 527 U.S. 526, 534 (1999)(Title VII limits punitive damages to cases of intentional discrimination). There is "malice" or "reckless indifference" when an employer discriminates "in the face of a perceived risk its actions will violate federal law." *Hall v Consolidated Freightways Corp. of Delaware*, 337 F.3d 669, 673 (6th Cir. 2002).

An employer may, however, avoid vicarious liability for intentional violations of

6

Title VII by managerial employees acting within the scope of their employment if it made good faith efforts to prevent discrimination in the workplace. *Kolstad*, 527 U.S. at 544-545. The *Kolstad* Court reasoned that an employer who proves its good faith efforts also proves that it did not act in reckless disregard of federally protected rights. *Id*. But, an employer will not escape punitive damages by merely demonstrating that it has a written or formal anti-discrimination policy. *Hall*, 337 F.3d at 675. The employer must also demonstrate that it engaged in good faith efforts to implement the policy. *Id*.

Defendant does not dispute that Plaintiff alleged intentional discrimination and that Jarlett was a managerial employee who acted within the scope of her authority when she fired Plaintiff. But, Defendant argues Plaintiff failed to present evidence of the requisite intent. In any event, Defendant says that it presented undisputed evidence of its formulation and implementation of anti-discrimination policies. The Court finds that while Plaintiff presented evidence which supports a finding of "malice" or "recklessness," he failed to rebut Defendant's evidence of its good faith efforts to comply with Title VII.

A plaintiff may demonstrate the requisite mental state by showing that "the relevant individuals knew of or were familiar with the anti discrimination laws and the employer's practices for implementing those laws" and discriminated despite that knowledge, or that "defendant's employees lied, either to the plaintiff or to the jury, in order to cover up their discriminatory actions." *Hall*, 337 F.3d at 675 (citation omitted). *See also Sackett v ITC*, 374 F.Supp.2d 602, 611 (E.D. Tenn. 2005). Jarlett testified she was trained on Defendant's policies against retaliatory conduct, and Plaintiff presented evidence (set forth above) from which a reasonable juror could find by a preponderance that she, nevertheless, fired Plaintiff in retaliation for his prior lawsuit. Therefore,

7

Plaintiff established that Jarlett acted with "malice" or "reckless indifference."

But, Plaintiff failed to rebut evidence presented by Defendant that it engaged in good faith efforts to comply with Title VII. Defendant presented ample, undisputed evidence that it formulated, disseminated, and trained employees on its anti-discrimination policies. Jurors could have found that VanTilburg failed to comply with Defendant's policies by failing to conduct a thorough investigation of two complaints by Plaintiff that Jarlett treated him differently because of his prior lawsuit. Tr. Vol. 3 at pp. 179, 190-191, 197-201. But, Defendant is correct that Plaintiff cannot rely solely upon Defendant's failings with regard to him to rebut cognizable evidence it implemented appropriate policies to combat violations of Title VII; Plaintiff must also present some evidence Defendant had a general disregard for the prohibitions of Title VII. That is, although *Kolstad* does not directly address the proofs required to rebut a showing of good faith efforts by a defendant, at least one district court within the Sixth Circuit interpreting *Kolstad* held that a court must consider both what occurred in the incident at hand and the employer's historical approach to such claims:

> The focus of both parties' showings on this element should be the employer's overall efforts, not merely its actions with regard to the case at hand, although those actions will be part of the analysis. In any case in which a plaintiff is successful in proving intentional discrimination, there was some breakdown of the defendant's antidiscrimination policy, since unlawful discrimination did take place. If every case in which an antidiscrimination policy did not work perfectly were appropriate for punitive damages, that is, virtually every case, the rejected system would return, and the two-tiered approach envisioned by *Kolstad* would be thwarted.

*Sackett*, 374 F.Supp.2d at 625-626. *Sackett* stated the court must examine "the Defendants' general practice with respect to its compliance with Title VII, not what may

8

or may not have happened with respect to Plaintiff," because the fact that defendant "bungled Plaintiffs' complaint . . . does not mean [Defendants] had an ineffective antidiscrimination policy." *Id* at 630.

The parties did not identify any Sixth Circuit opinion which expressly interpreted *Kolstad* the same way or adopted *Sackett*'s reasoning. But, the Court has not found, nor did Plaintiff cite, any case where a plaintiff was allowed to rely solely upon an isolated incident of discriminatory conduct to rebut evidence of a defendant's good faith efforts. In *Hall v Consolidated Freightways Corporation of Delaware*, 337 F.3d 669 (6th Cir. 2003), in addition to plaintiff's own allegations of discrimination the court considered that defendant failed to enforce its anti-discrimination policy for four years despite numerous incidents of racial animus, and rejected defendant's good faith efforts defense. Also, in *Tisdale v Federal Express Corp.*, 415 F.3d 516, 531 (6th Cir. 2005), the Court held that defendant's good faith efforts defense was rebutted by evidence defendant ignored its anti-discrimination policies by firing plaintiff in retaliation for his complaints about discriminatory practices <u>and</u> evidence defendant failed to address claims of discrimination by plaintiff and others over the preceding three years.

The *Sackett* Court's interpretation of *Kolstad* is reasonable and consistent with *Hall* and *Tisdale*. Because Plaintiff presented no evidence beyond his own experiences with Jarlett and VanTilburg that Defendant had a history or pattern of disregarding its anti-discrimination policies, his claim for punitive damages should not have been submitted to the jury. The Court grants Defendant's motion for judgment as a matter of law with respect to the punitive damage award.

  **B.**  **Motion for New Trial**

A party may move for a new trial under FRCP 59(a). "[A] new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.,* the proceedings being influenced by prejudice or bias." *Holmes v City of Massillon, Ohio*, 78 F.3d 1041,1045-1046 (6th Cir. 1996), *cert. den.*, 519 U.S. 935 (1996). The burden is upon the moving party to show that it suffered prejudice. *Tompkin v Philip Morris USA, Inc.,* 362 F.3d 882, 891 (6th Cir. 2004). Where a party claims prejudice due to the trial court's alleged erroneous admission or exclusion of evidence, the moving party must show that the evidence would have affected the outcome of the trial. *Morales v American Honda Motor Co., Inc.,* 151 F.3d 500, 514 (6th Cir. 1998)("Even if a mistake has been made regarding the admission or exclusion of evidence, a new trial will not be granted unless the evidence would have caused a different outcome at trial.").

Defendant contends the Court erred by excluding the testimony of Jimmy Millard and the outcome of Plaintiff's first lawsuit ("Fisher I"). The Court finds that Defendant failed to establish that either exclusion was erroneous.

### 1. Millard Testimony

Jimmy Millard was Defendant's Regional Employee Relations Manager. He was on Defendant's "may call" witness list. Defendant wanted to call him to testify that: 1) Plaintiff received all of the benefits of Defendant's Employee Dispute Resolution ("EDR") process after he was terminated; 2) Defendant typically opted out of the arbitration step of the EDR process; 3) local District Human Resources Managers such as VanTilburg were often called upon to assist managers of NAMs when the Human Resources

10

Manager to whom the NAM directly reported was located out of state; and 4) Defendant implemented policies, procedures and training in accordance with its commitment to secure a workplace free from discrimination and retaliation.

The Court found that Millard's testimony was not relevant and would be cumulative. Tr. Vol. 7 at pp. 9-11. Defendant argues that the exclusion of Millard's testimony was prejudicial because: 1) Plaintiff was allowed, without rebuttal, to suggest to the jury that Defendant was to "blame" for the case going to trial because Defendant prevented him from taking full advantage of the EDR process by opting out of arbitration; 2) Defendant was unable to rebut the implication that Plaintiff was treated differently than any other employee when he opted for arbitration and Defendant opted out; 3) it would have counteracted Plaintiff's demand for punitive damages which was based in part on Defendant's alleged failure to provide an effective avenue for addressing employee complaints; and 4) Millard was the only neutral party who could testify about Defendant's anti-discrimination policies.

Defendant failed to establish that excluding Millard's testimony was erroneous, prejudicial to Defendant, or that the outcome of the trial would have been different had he been allowed to testify. Much of Millard's proposed testimony was with respect to uncontested facts addressed by other witnesses. Specifically, VanTilburg testified, and Plaintiff did not dispute, that Plaintiff was permitted to participate in the entire EDR process after he was fired, except for the final arbitration stage which either party could opt out of. Tr. Vol. 4 at pp. 23-29. Plaintiff testified that arbitration was optional and an exhibit was admitted (and provided to jurors) explaining the same. Tr. Vol. 5 at pp. 144-145. Millard's testimony that Defendant typically opts out of arbitration, as it did in this

11

case, was not necessary to "rebut" the implication that Plaintiff was treated differently since Plaintiff did not claim Defendant's decision was due to differential treatment. Plaintiff's counsel only asserted during closing arguments that Defendant's rejection of arbitration was the reason the trial went forward. Counsel's statement was factually accurate and undisputed; if Defendant had agreed, arbitration would have been binding and Plaintiff's sole remedy.

Other witnesses covered the balance of Millard's expected testimony. VanTilburg and Defendant's Vice President of Strategic Accounts, Steve Harmon, explained that VanTilburg was asked to assist Jarlett in confronting Plaintiff, instead of Plaintiff's immediate Human Resources Manager, Henry Short, because she was local and Short was in Georgia. Tr. Vol. 3 at pp. 223-224; Tr. Vol. 6 at pp. 166-167. Harmon and VanTilburg indicated that it was typical to call upon a local rather than a distant Human Resources manager when addressing local issues. *Id*.

Next, VanTilburg testified about Defendant's anti-discrimination policies, procedures and training. Because the fact that Defendant had those policies in place was not disputed, Defendant has not persuasively established that it was prejudiced by not calling Millard as a neutral party to give the same testimony.

Lastly, Defendant's contention that Millard would have counteracted Plaintiff's demand for punitive damages, which Defendant says was based in part on its alleged failure to provide an effective avenue for addressing employee complaints, is moot since the punitive damage award is reversed. Even if the award is not struck, Defendant failed to establish prejudice or error since Plaintiff did not dispute that he was afforded the entire EDR process after he was fired, except for the optional arbitration

12

stage. Defendant does not explain what, if anything, Millard could have added to the discussion of whether the EDR process was "effective."

Defendant's motion for a new trial on this ground is denied.

### 2. Outcome of Fisher I

The Court granted Plaintiff's motion in limine to exclude evidence of the outcome of the first trial between the parties, which was in favor of Defendant. Plaintiff argued that it was irrelevant and, alternatively, that the danger of unfair prejudice outweighed the probative value of the evidence, because jurors might decide the case on an improper basis--the presumption that his lack of success in the first suit means that his current claims lack merit.

The Court acknowledged that the outcome of the prior case may have been marginally relevant and probative, but found that the probative value was substantially outweighed by the danger of unfair prejudice to Plaintiff and, therefore, was inadmissible under FRE 403. The Court stated that it was reasonable to believe jurors might give undue weight to the first outcome when deciding the merits of this case. *United States v Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991)("Unfair prejudice means an undue tendency to suggest a decision on an improper basis."). Jurors were advised that Plaintiff filed a prior lawsuit against Defendant but not the outcome, and they were given a limiting instruction advising them not to speculate about the outcome because it was not relevant to the issues raised in this case.

Defendant claims error for essentially the same reasons it opposed Plaintiff's motion in limine. Each of Defendant's arguments will be addressed in turn, but they all fail for the same underlying reason--the marginal relevance and probative value of the

13

outcome of Fisher I was substantially outweighed by the danger of unfair prejudice to Plaintiff.

First, Defendant contends it was prejudiced by the Court's omission of the outcome of Fisher I because: 1) jurors would likely speculate about the outcome and conclude that Defendant would be more inclined to retaliate if it lost the prior suit than if it prevailed; and 2) it would have provided context for other evidence introduced, such as Plaintiff's argument that Jarlett testified against him during Fisher I and was, therefore, motivated to retaliate against him.

There is no merit to either claim because: 1) jurors were given a limiting instruction directing them not to speculate about the outcome; 2) Defendant has not shown that any prejudice it may have suffered supercedes the substantial danger of unfair prejudice to Plaintiff if the outcome were revealed; and 3) Plaintiff did not argue that Jarlett was motivated to retaliate against him because she testified against him in Fisher I; in fact, Jarlett testified that her role in Fisher I was minimal, and Plaintiff testified that his prior claims were not brought against Jarlett and her testimony was favorable to him.  Tr. Vol. 3 at p. 93; Tr. Vol. 5 at p. 28; Tr. Vol. 6 at p. 14.

Defendant next asserts that the Court erred in excluding the outcome because FRE 403 only permits the exclusion of evidence when the probative value is *substantially outweighed* by the danger of *unfair* prejudice.  Citing several cases in which the outcome of prior litigation was either admitted or excluded, Defendant argues that the fact that the outcome was unfavorable to Plaintiff's case did not render it unfairly prejudicial and the Court's ruling to the contrary was an abuse of discretion. And, Defendant says the Court's ruling eviscerated the entire theory of its case--that

14

anger and vindictiveness caused by the loss of Plaintiff's first lawsuit was a significant cause of his lack of responsiveness to management directives when he returned to work in 2002.

These arguments fail. The Court found that the probative value was substantially outweighed by the danger of unfair prejudice to Plaintiff because jurors might give the outcome undue weight when deciding the merits of this case, not just because the outcome would unfavorably impact Plaintiff's case. *See Rey*, 923 F.2d at 1222 (6th Cir. 1991). The cases Defendant cites to illustrate that the Court abused its discretion in making that determination are not instructive because in each case the outcome of prior litigation was admitted or excluded based upon unique facts which do not parallel the facts in this case. *See Landrum v Board of Regents of Eastern Kentucky Univ.*, 16 F.3d 1220 (6th Cir. 1994)(plaintiff's request that any other litigation in which he was involved be excluded was denied where interpretation of settlement agreement in prior suit was at issue in second suit)(unpub. op.); *Gower v IKON Office Solutions, Inc.*, 177 F.Supp.2d 1224 (D. Kan. 2001)(testimony about prior lawsuits against defendant for securities law violations were admitted to show plaintiff's state of mind when he reported what he believed were similar violations by defendant); *Regents of University of Minnesota v Medical Inc.*, 382 N.W.2d 201 (Minn. Ct. App. 1986)(court allowed limited testimony on outcome of prior suit plaintiff and defendant brought against a third party to give context to claims in second suit which stemmed from the previous outcome).

With respect to Defendant's theory of the case, Defendant has not shown that it was unduly prejudiced by its inability to argue that the alleged negative changes in Plaintiff's behavior towards Jarlett when he returned was due to his anger and

15

vindictiveness because he lost the first suit. Defendant solicited an admission from Plaintiff that he was angry with Defendant after the suit, and Defendant was allowed to and did argue that Plaintiff's perception that he was being retaliated against was fueled by that anger. Tr. Vol. 6 at p. 13; Tr. Vol. 8 at p. 62.

Defendant's final argument is that the exclusion of the outcome of Fisher I likely affected the damages award because Defendant was not allowed to refer to the outcome for impeachment purposes. That is, Plaintiff testified at trial that he and his wife divorced in large part because of his termination. During an earlier deposition, however, Plaintiff said that the fact that he took the first case to trial and lost was a leading factor in his divorce. The Court only permitted Defendant to impeach Plaintiff with his statement that the prior litigation was a leading factor in his divorce.

Again, Defendant failed to demonstrate that any prejudice it suffered by not being allowed to fully impeach Plaintiff outweighed the danger of unfair prejudice to him or seriously affected the outcome with respect to damages. Defendant was still allowed to expose a discrepancy in Plaintiff's testimony and argue that his decision to pursue litigation was the leading factor in his divorce, not his termination.

Defendant's motion for a new trial is denied.

**C. Remittitur**

As an alternative to a new trial, Defendant asks for remittitur of the $650,000 compensatory damages award. "The district court should reduce a jury's verdict only when the judgment 'clearly exceeds' the maximum amount of compensatory damages a jury could reasonably award." *Slayton v Ohio Dep't of Youth Services*, 206 F.3d 669, 679 (6th Cir. 2000)(citation omitted). Under federal law, "[a] trial court is within its

16

discretion in remitting a verdict only when, after reviewing all evidence in the light most favorable to the awardee, it is convinced that the verdict is clearly excessive, resulted from passion, bias or prejudice; or is so excessive or inadequate as to shock the judicial conscience of the court." *Gregory v Shelby County*, 220 F.3d 433, 443 (6th Cir. 2000). Michigan courts direct courts to consider similar factors to determine whether remittitur is warranted: "whether the verdict was the result of improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law or fact, whether it was within the limits of what reasonable minds would deem to be just compensation for the injury inflicted, and whether the amount actually awarded is comparable to other awards in similar cases." *Diamond v Witherspoon*, 265 Mich.App. 673, 694 (2005). But, "the excessiveness of a verdict is primarily a 'matter . . . for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses.'" *Slayton*, 206 F.3d at 679 (citation omitted).

Defendant argues that the $650,000 award: 1) is unreasonable and shocks the judicial conscience because Plaintiff did not seek medical or psychological treatment immediately before or after his termination and he suffered no long lasting mental injuries; 2) is considerably higher than the amount awarded to other plaintiffs in similar cases; and 3) was inflated by Plaintiff's claim that his termination caused his divorce, contrary to his deposition testimony that loss of the prior suit caused his divorce.

The Court is not persuaded that the jury's verdict is unreasonable or shocks the conscience for the reasons Defendant claims. Despite Defendant's suggestion to the contrary, neither federal nor state law requires a plaintiff to substantiate claims of mental anguish or distress with medical evidence. *Turic v Holland Hospitality, Inc.*, 85 F.3d

17

1211, 1215 (6th Cir. 1996); *Howard v Canteen Corp.*, 192 Mich.App. 427, 435 (1991), *overruled on other grounds by*, *Rafferty v Markovitz*, 461 Mich. 265 (1999). A plaintiff is only required to present competent evidence that the defendant's unlawful actions caused emotional distress, and may do so through his own testimony. *Turic*, 85 F.3d at 1215.

Plaintiff's termination ended a long career (18 years) and he testified that: 1) his firing was "horrible" and "depressing;" 2) he was unable to find any other employment for one year afterwards; 3) he ultimately found work in different industries which required him to live away from his family during the week; 4) his termination played a large part in his divorce; and 5) the divorce and separation due to his distant jobs strained his relationship with his minor children. Tr. Vol. 5 at p. 146-147,150-152, 154-157, 158, 176-177. Based on his testimony alone, Plaintiff is entitled to recover for "humiliation, embarrassment, disappointment, and other forms of mental anguish resulting from the discrimination." *Howard*, 461 Mich. at 435.

The Court is also not persuaded, based on the few cases Defendant cites for comparison, that the jury's verdict was excessive. *See Denhof v City of Grand Rapids*, 494 F.3d 534 (6th Cir. 2007)($1 million remitted to $350,000); *Weber v Infinity Broadcasting Corp.*, 2005 W.L. 3726303 (E.D. Mich. 2005)($2 million remitted to $300,000); *Barna v City of Cleveland*, 1998 W.L. 939884 (6th Cir. 1998)(unpub. op.)($125,000 remitted to $50,000). There is no basis for the Court to find that the limited number of cases Defendant cites are representative of the universe of jury awards, the majority of which are not appealed or otherwise discussed in published opinions. Indeed, in *Moody v Pepsi-Cola Metropolitan Bottling Company, Inc.*, 915 F.2d

18

201 (6th Cir. 1990), the Sixth Circuit declined to grant remittitur based on a comparison of the size of the verdicts in three other cases. The *Moody* Court reasoned that "an appellate court should not attempt to reconcile widely varied past awards for analogous injuries 'which in the abbreviated appellate discussion of them seem somewhat similar.'" 915 F.2d at 211 (citation omitted). The same reasoning applies in this case.

Defendant's final argument is that the jury award was inflated by Plaintiff's contradictory testimony regarding the extent to which his termination factored into his divorce. However, as discussed above, Plaintiff was impeached on the contradiction between his trial and deposition testimony. And, Plaintiff's divorce was only one injury he claimed to have suffered as a result of his termination. Other injuries to which he testified included an abrupt end to a lengthy career, being foreclosed from working in the same industry (because he cannot find employment in the package delivery industry), financial strain, and a strained relationship with his minor children due to the divorce and separation from them while working in distant locations.

## IV.   CONCLUSION

Defendant's Motions for Judgment as a Matter of Law is **DENIED** as to liability but **GRANTED** with respect to punitive damages. Defendant's Motion for a New Trial or, in the Alternative, for Remittitur is **DENIED**.

**IT IS ORDERED.**

S/Victoria A. Roberts  
Victoria A. Roberts  
United States District Judge

Dated:  March 31, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 31, 2008.

s/Carol A. Pinegar
Deputy Clerk